Filed
FEB 27 2024
CLERK, US BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
Tampa DIVISION
13 Pages Scanned by EM

# UNITED STATES BANKRUPTCY COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

Via Email @ 11:20AM

In re:

HENRY BADAAN

Case No: 8:24-bk-00197-RCT
Chapter 13

Debtor(s).
_____/

## DEBTOR'S EMERGENCY MOTION FOR CONTEMPT FOR WILLFUL & WANTON VIOLATIONS OF THE AUTOMATIC STAY, BAD FAITH, AND MISREPRESENTATION, SEEKING SANCTIONS AGAINST RANDY FREEDMAN, SHUMAKER, LOOP & KENDRICK, LLP, AND JENAY E. IURATO, ESQ. DEBTOR ASKS THE COURT TO VACATE THE *ORDER GRANTING AMENDED MOTION FOR RELIEF FROM STAY FOR RANDY FREEDMAN* [DE 28] PURSUANT TO THEIR CLEAR VIOLATIONS OF THE STAY PRIOR TO ITS ENTRY AND REINSTATE THE STAY SO DEBTOR MAY EVALUATE ALL OPTIONS, INCLUDING REMOVAL OF THE STATE ACTION TO THIS COURT

Debtor, Henry Badaan ("Debtor"), through undersigned counsel, requests that the Court enter an order awarding damages against Randy Freedman and Shumaker, Loop & Kendrick, LLP ("Plaintiffs") pursuant to Sections 362(k)(1) and 105 of the Bankruptcy Code and imposing sanctions pursuant to Rules 9011 and 9020 of the Federal Rules of Bankruptcy Procedure, and Reinstate the Stay as to Randy Freedman in order to protect Debtor from the prejudice and tainted proceedings in that court, which shall become evident pursuant to the information presented below, and allow Debtor the breathing room he needs to determine whether to seek Removal of the State Case to this honorable court.

## Introduction

Shame on Shumaker! While Franz Kafka may reside in the halls of Bank of America, *See Sundquist v. Bank of America, N.A., 566 B.R.563, 587 (Bankr.E.D.Ca. 2017) (vacated in part due to the settlement of the parties involved),* the Willful and Wanton violations of the Automatic Stay by one of Shumaker's Partner Attorneys in the related state case, "sent the Debtor in this case, along with his family, into a similar Kafkaesque nightmare of stay-violations, bad faith, and misrepresentation, Causing the Debtor and his spouse pain and suffering and severe emotional distress, leading to a sense of hopelessness, where even good faith gestures by the Debtor were ignored, as Shumaker committed Stay atrocities, which the court will have little choice but to accept under judicial notice, being undeniable and proved by the very actions of Shumaker's finest.

It is a sad tale of David versus Goliath, where Goliath is a mighty law firm with 12 offices and over 300 attorneys, and David is a weak fee monger, who once worked for Goliath, but failed to disclose this to the Debtor, with no waiver of conflict to be found. While this alone may not suffice to show any sort of conflict on its face, the numbers lead one to wonder how a pre-lawsuit demand of $174,999.00, has turned into a feast of billable hours, leading to over $500,000.00 being collected from the Debtor, before even reaching trial. Then, a demand for an additional $500,000.00 from Debtor to continue through trial. Thus, making the $5,000.00 retainer paid by Debtor in that case grossly undervalued and likely the bait for hooking the $400,000.00 already paid. This forced the Debtor to waive the white flag and seek the protection of this Court. If Plaintiff's fees are anywhere near that of Defendant in the State Case, then a mere $174,999.00 demand has turned into a windfall for the attorneys involved, likely to surpass over $2,000,000.00 (TWO MILLION DOLLARS) combined, when all is said and done, if they

be allowed to continue the abuse. Suddenly a $174,999.00 demand, which received no offer of settlement whatsoever pre-suit, and litigation with no end in sight, makes one wonder.

Debtor asks this Court to put a halt to the horrific actions by Plaintiff and seeks compensatory damages, damages for pain and suffering, severe emotional distress, attorney's fees, and punitive damages in an amount sufficient to send a clear signal to the powerhouse law firms that even they must play by the rules, and that violating the Automatic Stay, particularly with clear knowledge of the Stay, will lead to severe consequences.

**Principal Sanctionable Actions**

The two principal sanctionable actions that are the subject of this Sanctions Motion are:

1. <u>Egregious willful and wanton violations of the automatic stay by Randy Freeman through his counsel, Shumaker, Loop & Kendrick, LLP: at least 9 docketed violations in the state action occurring between the time the suggestion of bankruptcy was filed, and the instant bankruptcy was initially dismissed, where Jeff Fabian, a partner with Shumaker, not only acknowledges the stay in his filings, but argued bankruptcy law while violating the Stay as well. Jenay Iurato, debtor's State Court counsel, commits multiple clear violations of the Stay as well with as well.</u>

   a. The filing of a bankruptcy case operates as an automatic stay against most entities from, among other actions, "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title." 11 U.S.C. §362(a).

   b. If a party willfully violates the automatic stay a debtor who is injured by the willful violation is entitled to recover his or her actual damages including costs and attorneys' fees, and if appropriate, may also recover punitive damages. 11 U.S.C. § 362(k). A violation of the automatic stay is willful if (1) the party knew the automatic stay was invoked and (2) intended the actions which violated the stay. *In re Jove Engineering, Inc.*, 92 F.3d 1539, 1555 (11th Cir. 1996). A creditor must not only cease the act that would violate the stay, "it must also take all

3

necessary affirmative action to stop the proceedings which are in violation of the automatic stay." *In re Briskey*, 258 B.R. 473, 477 (Bankr.M.D.Ala. 2001).

c. The instant Bankruptcy case was filed on January 16, 2024, and a Suggestion of Bankruptcy was immediately filed in Case Number 21-CA-005298, Randy Freeman v. Henry badan, et. al., in The Circuit Court of The Thirteenth Judicial Circuit In And For Hillsborough County, Florida.

d. A suggestion of bankruptcy was also filed in the state case on January 16, 2024. [See Exhibit A]

e. It is the Debtor's position that all pending and future activity in the state case should have been canceled immediately upon the filing of the suggestion of bankruptcy. Even when a matter in the state court is stayed, the stay does not prevent the state court from holding periodic status hearings to determine whether the stay is still in effect. *See, e.g., In re Peters*, 101 F.3d 618, 619 (9th Cir. 1996).

f. The Violations committed in this case precisely illustrate why ALL activity MUST come to a halt to prevent any injustices to the Debtor.

g. Between the time the Suggestion of Bankruptcy was filed, and the instant case was initially Dismissed on February 7, 2024, the State Court docket shows 9 (NINE) separate entries, ranging from:

- Motion to Strike filed on 1/18/24 by Debtor's State Court Counsel. [Exhibit B]
- Order Granting Motion to Strike filed on 1/22/24. [Exhibit C]
- Motion to withdraw as attorney for Defendant filed on 1/19/24 (with attached suggestion of bankruptcy as exhibit). [Exhibit D]
- Notice of withdrawal of Plaintiff's Second Motion for Summary Judgment filed on 1/19/24. [Exhibit E]

4

- Response to the Motion to Withdraw by Jeff Fabian, a Partner with Shumaker, Loop & Kendrick, LLP, filed on 1/26/2024. [Exhibit F]
- Hearing on the motion to withdrawal as counsel held on 2/6/24.
- Order granting withdrawal, granting only 20 days for the Debtor to find new counsel on 2/6/24. [Exhibit G]
- Notice of Continuance of Pre-Trial Conference, filed on 2/6/24, prior to obtaining relief, but clearly anticipating relief being that the date was set to 2/8/24 (*prior to obtaining relief from stay*). [Exhibit H]
- Motion to Extend Time filed by the Debtor Pro-Se, on 2/8/24, (as continuation of the Stay Violation on February 7, 2024). This motion was *Drafted by His Former Counsel Who Had Withdrawn From His Case*. [Exhibit I]

h. Debtor hereby asks the Court to take Judicial Notice of Exhibits [1-xxx] all related to state Case Number 21-CA-005298, Randy Freeman v. Henry Badaan, et. al., in The Circuit Court of The Thirteenth Judicial Circuit In and For Hillsborough County, Florida., pursuant to Rule 201 of the Federal Rules of Evidence, which state, "The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. These factors are easily met as the Exhibits are relevant Court Documents from the related civil case and further are excepted from Hearsay as statements from party opponents.

i. The Willful and Wanton Violations of Stay worsen when Jeff Fabian references the instant Bankruptcy case on page 2, paragraph 2, of Plaintiff's Response in Opposition for Defense Counsel to Withdraw, when stating, "*Freedman and Badaan have actively litigated this case for over two and a half years before Badaan filed a Suggestion of Bankruptcy on January 16, 2024. See Suggestion of Bankruptcy, Doc. 509 (Jan. 16, 2024).* [Exhibit F] Showing clear knowledge and awareness of the Stay he is in the process of violating through his undeniable actions. Not

5

only does he reference the instant Bankruptcy in paragraph 2, but then references it again in paragraph 6, *"Prior to Badaan filing a suggestion of bankruptcy,"* paragraph 8, *"Freedman filed a motion in the federal bankruptcy court seeking to lift the automatic stay pursuant to 11 U.S.C. § 362."* Does this now mean that merely filing your motion for relief gives you an extra special, free, pre-hearing grace period while waiting for your motion for Relief to be heard? Then again in paragraph 9, *"Ms. Iurato is in the best position to take this case to trial if Freedman is granted relief from the automatic stay."* In paragraph 10, *"The only alternative would be for any newly retained counsel to request a stay or continuance of this case that would impact the bankruptcy proceeding by delaying a determination of the amount of the debt at issue in that proceeding,"* On this point Debtor agrees completely, but not as to the Violation, but rather, to one of Debtor's assertions as to why the State case must be Removed to this Court.

j. Mr. Fabian then goes on to insult this Court by conducting almost two pages of Bankruptcy Stay analysis in "Section II. Discussion." The Debtor would like to once again concur with some of Mr. Fabian's arguments, including, *"Whether cause exists to grant stay relief is determined on a case by case basis based upon the totality of the circumstances in each particular case,"* *"Equitable considerations, such as balancing prejudice to the debtor against hardship to the moving party, and judicial economy considerations, are relevant in determining whether to lift the stay."* It is clearly being established that the Debtor has been severely prejudiced in the State case. A neutral review of these actions could lead to no other conclusion.

k. Mr. Fabian does not let up, pushing the bounds even further by arguing that Relief would be proper as to Randy Freeman because his *CLAIMS* for compensatory damages alone would push the Debtor above the Unsecured Debt ceiling for Chapter 13. Apparently, it is no longer important to win the case first.

6

l. Another position Debtor also concurs with, as this Court is best suited to handle all aspects related to the Debtor and the Estate. Then Mr. Fabian adds that Punitive Damages have also been requested. Debtor does not deny that right, in fact further thanks Mr. Fabian for his support towards establishing the Punitive damages being sought here. He concludes by stating that *"For at least these reasons, Freedman submits that the bankruptcy court is likely to grant relief from the stay."* This egregious violation speaks for itself.

m. Jeff Fabian should have known better. He *must* be held to a much higher standard than the average creditor, especially being a Partner. Unbelievably, of the more than Three Hundred (300) attorneys employed by Shumaker, *NINETEEN (19)* of them practice bankruptcy as of the time of this motion, that list includes:

- Steven M Berman, Esq.
- Stefan Beuge, Esq.
- Ronald D.P. Bruckmann, Esq.
- Elizabeth R. Bursa, Esq.
- David H. Conaway, Esq.
- David J Coyle, Esq.
- Jason W. Davis, Esq.
- Hugo S. Debeaubien, Esq.
- David Delrahim, Esq.
- Mark D. Hildreth, Esq.
- Sara S. Jawad, Esq.
- Regina M Joseph, Esq.
- Thomas Kirkham, Esq.
- John N Mackay, Esq.
- Elizabeth S Moore, Esq.
- Francis Morency, Esq.
- Seth P Traub, Esq.
- Jay B Verona, Esq.
- Thomas M Wood, Esq.

n. Surely Mr. Fabian had a minute to contact any of these learned professionals to get their advice. At the very least, he should have reached out to one of the SEVEN (7) paralegals who work for Shumaker and also handle Bankruptcy matters. It is very likely that any one of them would have

7

advised a better strategy than the one taken by Mr. Fabian.

o. Attorney Jenay Iurato, Esq. represented Debtor in the State Court action. Ms. Iurato's violations are clear and indisputable and speak for themselves:

- Motion to Strike filed on 1/18/24 by Debtor's State Court Counsel. [Exhibit B]
- Motion to withdraw as attorney for Defendant filed on 1/19/24 (with attached suggestion of bankruptcy as exhibit). [Exhibit D]
- Hearing on the motion to withdrawal as counsel held on 2/6/24.
- Motion to Extend Time filed by the Debtor Pro-Se, on 2/8/24, (as continuation of the Stay Violation on February 7, 2024). This motion was *Drafted by His Former Counsel Who Had Withdrawn From His Case.* [Exhibit I]

p. One thing is clear, all parties should have sought Relief from Stay. And if you move for relief, be sure you have it before you commit flagrant violations of Stay.

q. The atrocities in this case are indisputable proof that upon filing a Bankruptcy petition, every docketed, pending or scheduled event in a State Court Case, including, but not limited to, all scheduled notices, motions, responses, depositions, hearings, orders, trials, status conferences (other than a status conference to determine whether the Stay is still in effect, *"stay does not prevent the state court from holding periodic status hearings to determine whether the stay is still in effect."* See, e.g., In re Peters, 101 F.3d 618, 619 (9th Cir. 1996)), must be considered *"the* commencement or *continuation,* including the issuance or employment of process, *of a judicial,* administrative, or other *action* or proceeding *against the debtor,"* as was intended pursuant to 362(a)(1), and this Court should hold that State Courts *MUST* cancel everything on the docket until further notice from the Bankruptcy Court. This would relieve the State Court Judges from the unenviable position of having to try to decipher the Bankruptcy Code to

determine whether a Stay remains in effect.

2. <u>Bad Faith & Misrepresentation: Shumaker, Loop & Kendrick, LLP, surpassed the norms of aggressive litigation and ventured into a realm were intimidation, bad faith, misrepresentation and what could only be described as "lack of soul," were the tactics of choice, while the only party to show any type of good faith in hopes of resolution, was the Debtor.</u>

   a. Let's begin with the "lack of soul" showed by Shumaker. On march 28, 2022, Jeff Fabian filed a motion that sought, among other things, Sanctions against Debtor Defendant. The issue appeared to be a doctor's note that restricted the Debtor to "No Stress / light Duty" for a period of eight weeks beginning on March 9, 2022, due to a cardiac ablation. In support of his argument, Fabian stated, "More to the previous point, neither Badaan nor his doctor's note indicate that Badaan should refrain from his work activities in selling products online. Badaan's continued work activities involve sitting at a computer terminal processing customer orders, packaging and mailing products, updating and creating online product listings, placing orders for inventory, responding to emails from customers and suppliers, designing and publishing marketing materials, answering customer questions, and engaging in phone calls and video conference calls with suppliers and customers. *These types of activities are certainly commiserate with the supposed burden that Badaan would face in participating in discovery by reviewing and downloading documents and answering questions during a remote video deposition."* [ SEE EXHIBIT J]

   b. That statement is not only reprehensible, but almost inhumane! How dare they analogize performing a normal every day task one is comfortable with, to having to review discovery in preparation for deposition during hostile litigation? Assuming that *commiserate* was a typo, since the words means "to sympathize," let's substitute "comparable" instead and the question again. No, it is in no way comparable. Every practicing attorney in this state wishes that statement were

true. Clients are always intimidated by the legal process and is one of the reasons attorneys are also referred to as counselors. Not a single consumer bankruptcy Debtor has ever filed for bankruptcy who wasn't anxious in anticipation of even the simplest 341 Meeting of Creditors.

c. Shame on Shumaker once again! How arrogant has the culture at that firm become for this to even be considered an ethical argument? Apparently, the executives at Bank of America do not stand alone, and must share the Kafkaesque Realm with Shumaker, Loop & Kendrick, LLP. This statement alone is proof beyond doubt about everything wrong with the state case, which has been tainted and why the debtor is being severely prejudiced and has likely been fighting a hopeless battle to this very day. This atrocity is an example of one of the primary reasons the automatic stay exists. The drafters must have known that at some point in time David would need assistance in taking down the Goliath. That time has come.

d. Debtor once again asks the Court to take Judicial Notice of Exhibit J. Heck, Debtor asks that the Court take Ethical Notice, Moral Notice even just plain Human Notice, and how Shumaker has bypassed each of them in this flagrant disregard for fair play. Shame on Schumacher! Shame on every attorney practicing in this country who force litigants to suffer needlessly. Shame on the Goliaths who do not play fair and most of all shame on the attorneys who take advantage of the Davids of the world, and charge a ridiculously small sum to retain them only to deplete everything they have worked for by continuing with needless litigation and continuing to collect fee after fee after fee while billing hour after hour after hour, which leads to night after night after night of sleeplessness, misery, depression, and hopelessness for their own clients.

e. The Honorable Christopher M. Klein said it best. "In the calculus of reprehensibility, Bank of America's intentional conduct adds up to reckless and callous disregard for the rights of others. Bloom, 875 F.2d at 228. It has been wanton and oppressive. Snowden, 769 F.3d at 657. This

equates with a high degree of reprehensibility. State Farm, 538 U.S. at 418, 123 S.Ct. 1513, citing Gore, 517 U.S. at 575, 116 S.Ct. 1589. The high degree of reprehensibility, coupled with the significant involvement by the office of the Bank of America Chief Executive Officer, calls for punitive damages of an amount sufficient to have a deterrent effect on Bank of America and not be laughed off in the boardroom as petty cash or "chump change." *Sundquist v. Bank of America, N.A.*, 566 B.R.563 (Bankr.E.D.Ca. 2017) *(vacated in part due to the settlement of the parties involved)*. The only substitutions which need be made are "Shumaker, Loop and Kendrick, LLP" for "Bank of America" and possibly "Golf Course" for "Board Room."

f.  The shameful actions continue throughout. While arguing that Debtor's State Court Counsel could not, in the interest of justice, be allowed to withdraw from representation of Defendat Debtor because it was too close to trial and she was the ONLY one who could possibly be prepared in time. Then in opposition of Defendant Debtor's motion to extend time to seek new counsel, argue the exact opposite and claim that Debtor does not need additional time and the time given allows incoming counsel plenty of time to prepare. Clearly the positions are in complete contradiction to one another. Mistake? I think not, just another example of bad faith and possibly misrepresentation to the tribunal.

g.  Unfortunately, we shall never know if the honorable judge in the State Case would have called them out on that point at the hearing. This is because, in the *ONLY* display of good faith to be found in that case, and possibly anywhere throughout the dispute, Debtor withdrew his own motion to extend time in the hopes of making everything go away through a fair settlement now that his former attorney was no longer involved. But that was just a pipedream. Shumaker continued their unfair practices and continued along the state court docket, which should have been canceled from day one, as if nothing had happened.

11

**Punitive Damages**

1. Where Congress authorizes punitive damages in a general manner, as in § 362(k)(1), it may be presumed that it intends that punitive damages be in an amount that serves the full panoply of interests, including societal interests, that are vindicated by punitive damages. In the end, it all adds up to a question of proof for the trier of fact. If the court, in its capacity as trier of fact, is persuaded that significant harm has been clearly established and that there is a causal connection between the stay violation and the harm, then § 362(k)(1) damages are appropriately awarded.

2. Debtors seek an award of punitive damages. The Court must award such damages recognizing that "[p]unitive damages should be awarded in an amount sufficient to serve their purpose of deterrence . . . and must be tailored not only based upon the egregiousness of the violation, but also based upon the particular creditor in violation." Panek, 402 B.R. at 77 (quoting In re Curtis, 322 B.R. 470, 486 (Bankr. D. Mass. 2005)). Courts have found circumstances where parties arrogantly defy the Bankruptcy Code to be most appropriate for the award of punitive damages. See id

3. Thus, the only question as to punitive damages, is how much is enough to make Shumaker rethink its actions and ensure changes to their future behavior?

4. Shumaker, Loop & Kendrick, LLP has 12 offices and over 300 attorneys. Their total revenues in 2022 were approximately $137,408,000.00. The Profit Per Equity Partner was $533,000.00 and their Revenue Per Lawyer was $565,000.00. Punitive damages based on 1% of total revenues would be $1,374,080.00. A mere $4580.27 per lawyer. Barely more than a celebratory dinner or weekend getaway. That would not send a message the Partners

would not scoff at on the golf course. They are a sophisticated firm, where a partner violated the Automatic Stay, acted in Bad Faith, and Made numerous misrepresentations and even contradicted himself. This case must send a clear warning. Attorney's must be held to a higher standard. The Punitive Damages award must be one the Honorable Christopher M. Klein would be proud of. Thus, Debtors ask this Court to award Punitive Damages for an amount no less than $6,870,400.00. Still a mere 5% of Goliaths revenues under 2022 standards, and an order to dismiss the State Court Case and release Debtor any related future claims.

5. As for Jenay Iurato, Debtor seeks Punitive damages in an amount the court sees fit.

6. Debtor asks that this Court stop the Goliath in its tracks. In this Court they do not hold any power. This Court must send a clear message that the type of behavior displayed by them is unacceptable and a perfect example of the type of practice that gives all attorneys a bad name.

Accordingly, Debtor asks this Court to impose Punitive Damages for an amount no less than $6,870,400.00, sanctions, attorney's fees, and damages for emotional distress at its discretion pursuant to the egregious and wanton behavior of Shumaker, Loop and Kendrick, LLP. Debtor further asks the Court to award compensatory damages in the amount of $400,000.00 against Jenay Iurato, for her bait and switch tactics, bad faith actions, and her knowing and willful violation of the Automatic Stay. Lastly, Debtor asks for an Order Vacating the *ORDER GRANTING AMENDED MOTION FOR RELIEF FROM STAY FOR RANDY FREEDMAN* [DE 28], and for any further relief the Court deems fit.